UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| COURTNEY GREEN,<br>　　*Plaintiff*, | )<br>)<br>) | CASE No. 3:22-cv-01397 (KAD) |
| v. | )<br>) | |
| WARDEN CARON, et al.,<br>　　*Defendants*. | )<br>) | FEBRUARY 9, 2023 |

**INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A**

Plaintiff Courtney Green, a *pro se* sentenced prisoner[1] in the custody of the Connecticut Department of Correction ("DOC") at Carl Robinson Correctional Institution, commenced this action under 42 U.S.C. § 1983 against Robinson Warden Caron, Deputy Warden Rios, Deputy Warden Carbone, Counselor Supervisor Eagleson, Captain Keaton, Recreation Director Hartery, Correction Officer Johns, and Correction Officer Cormier. Compl. at 1–3, ECF No. 1. On February 7, 2023, Plaintiff filed an amended complaint seeking damages and injunctive relief against the same defendants in their individual and official capacities. Am. Compl. at 3, ECF No. 15. The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A.

**STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and dismiss any portion of a complaint that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." Rule 8 of the Federal Rules of Civil Procedure requires that a

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). The Connecticut DOC website reflects that Plaintiff was sentenced on July 20, 2009 to a term of incarceration that has not yet expired. *See Inmate Information*, CT Dep't of Correction, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=320094 (last visited Feb. 9, 2023).

complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action'" or "'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

**DISCUSSION**

Section 1983 of Title 42 provides that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." "The common elements to all § 1983 claims are: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Lee v. City of Troy*, 520 F. Supp. 3d 191, 205 (N.D.N.Y. 2021) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). Further, a plaintiff seeking monetary damages

from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991))). To "hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020).

Plaintiff claims that he is entitled to relief pursuant to section 1983 because he suffered Eighth Amendment violations relating to his conditions of confinement at Robinson and a Fourteenth Amendment deprivation of his right of access to the courts. The Court's consideration of each constitutional claim will summarize the alleged facts relevant to each claim.

**Eighth Amendment**

Prison conditions can constitute cruel and unusual punishment in violation of the Eighth Amendment if prison officials act, or fail to act, with "deliberate indifference to a substantial risk of serious harm to a prisoner." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). In order to state a claim for an Eighth Amendment violation based on deliberate indifference to health or safety, Plaintiff must allege (1) that he was "incarcerated under conditions posing a substantial risk of serious harm" and (2) that the prison-official defendant "had a 'sufficiently culpable state of mind,' which in 'prison-condition cases' is 'one of deliberate indifference to inmate health or safety.'" *Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020) (quoting *Farmer*, 511 U.S. at 834). In order to meet this second prong, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

*Id.* (quotation omitted). Thus, the Court considers whether Plaintiff has sufficiently alleged facts showing that each defendant acted with deliberate indifference, *i.e.*, that he "personally knew of and disregarded an excessive risk to [Plaintiff's] health or safety." *Tangreti*, 983 F.3d at 619.

A conclusory allegation that a defendant or defendants created a policy or custom under which unconstitutional practices occurred is insufficient to state an Eighth Amendment claim. *See Jusino v. Quiros*, No. 3:21-cv-620 (SRU), 2021 WL 5111908, at *8 (D. Conn. Nov. 3, 2021). But a plaintiff may be able to establish an Eighth Amendment claim where a prison official allegedly "promulgated an unconstitutional policy with a culpable mental state—in this case, deliberate indifference." *Brunache v. Annucci*, No. 22-CV-196 (JLS), 2023 WL 146850, at *12 (W.D.N.Y. Jan. 9, 2023) (quoting *Stone #1 v. Annucci*, No. 20-CV-1326 (RA), 2021 WL 4463033, at *8–9 (S.D.N.Y. Sept. 28, 2021)).

Meals in the Dining Room

Plaintiff claims that he is anemic and immunocompromised. Am. Compl. ¶ 22. He complains that Defendants Caron, Carbone, and Rios subjected to him to a risk of serious harm by creating a custom and policy, contrary to CDC guidelines, that requires inmates to wear masks in all congregate settings except while having meals in the dining hall, where about 119 inmates eat within a six-foot radius of one another without social distancing. *See id.* ¶¶ 16–24.

"[C]orrectional officials have an affirmative obligation to protect inmates from infectious disease." *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996). Whether a particular danger poses a substantial risk of serious harm in a prison must be evaluated in light of the steps that the facility has already taken to mitigate the danger. *See Helling v. McKinney*, 509 U.S. 25, 36 (1993) (considering a facility's smoking policy and changes that had already been made to the prisoner's confinement in assessing the risk of harm). For purposes of initial review, the Court assumes that

4

the contagious respiratory illnesses of COVID-19 or Severe Acute Respiratory Syndrome ("SARS") present a substantial risk of serious harm to Plaintiff's health.

**Warden Caron.** Plaintiff alleges that he filed a grievance to request a feed-back tray pass so that he could eat in his cell due to his anemia and immunocompromised status. Am. Compl. ¶¶ 22–23. Warden Caron denied the request. *Id.* ¶ 23. For purposes of initial review, Plaintiff has plausibly alleged that Warden Caron was aware of but consciously disregarded the risk to Plaintiff's health by requiring him to eat in the dining room where inmates neither wear masks nor social distance. Thus, Plaintiff may proceed on this Eighth Amendment claim against Defendant Caron in her individual capacity.

**Deputy Warden Carbone.** Plaintiff alleges that he wrote an inmate request to Deputy Warden of Treatment and Programs Carbone to inquire why he is subjected to eating with inmates without masks in the dining room where there is no social distancing while the community COVID-19 positivity rate was 11.83%. *Id.* ¶¶ 18–21. Defendant Carbone allegedly responded by stating, "It is mandated that masks must be worn in congregate settings." *Id.* ¶ 20. For purposes of initial review, the Court will permit Plaintiff to proceed against Defendant Carbone for his conscious disregard of the risk to Plaintiff's health by requiring Plaintiff to eat in the dining room where inmates neither wear masks nor social distance. This claim will proceed against Defendant Carbone in his individual capacity for further development of the record.

**Deputy Warden Rios.** Plaintiff alleges that Deputy Warden of Operations Rios was in charge of overseeing dining room operation and compliance with CDC protocols. *Id.* ¶ 24. Plaintiff does not allege any facts to suggest that Deputy Warden Rios was aware of but ignored Plaintiff's concerns about inmates eating in the dining room without social distancing. Nor has he alleged that that Deputy Warden Rios was aware of Plaintiff's particular risk of harm from COVID-19

exposure. Accordingly, the Court dismisses this Eighth Amendment claim against Defendant Rios as not plausible.

Mitigation Measures

Plaintiff maintains that Defendants Warden Caron, Deputy Warden Rios, Deputy Warden Carbone, and his Unit Manager Eagleson failed to take adequate measures to prevent the spread of respiratory contagions. *See id.* ¶¶ 25–35, 83–86. Plaintiff claims that Defendants Caron, Rios and Eagleson failed to direct the installation of ultraviolet germicidal irradiation systems ("UGIS") and HEPA filters in the facility. *Id.* ¶ 25. He asserts that Defendants Caron, Rios, Carbone, and Eagleson failed to use HEPA filters and aerosolized disinfectants in Plaintiff's housing unit after inmates tested positive for COVID-19 and SARS. *Id.* ¶¶ 27–35. He alleges that these Defendants possess HEPA filters and aerosolized disinfectants that can eliminate the COVID-19 virus from the air. *Id.* ¶¶ 25, 30. He also asserts that Warden Caron's failure to implement population strategies at Robinson results in overcrowded conditions with prisoners sleeping less than six feet apart from one another. *Id.* ¶¶ 72–74.

**Warden Caron.** A prison official need only be aware of the risk of harm to an inmate and "awareness may be proven 'from the very fact that the risk was obvious.'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Farmer*, 511 U.S. at 842). At this early stage, Plaintiff has plausibly alleged that Warden Caron acted with deliberate indifference to his health risk at Robinson by failing to curb inmate overcrowding. The Court will also permit Plaintiff to proceed on his deliberate indifference claim against Warden Caron for failure to implement adequate measures to prevent the spread of viral contagions in the facility and Plaintiff's housing unit. These claims will proceed against Warden Caron in her individual capacity.

**Unit Manager Eagleson**. To the extent Plaintiff asserts that Unit Manager Eagleson acted with deliberate indifference by failing to provide aerosolized disinfectants or procure HEPA filters for the housing unit after inmates tested positive for COVID-19 and SARS, the Court will permit Plaintiff to proceed on his Eighth Amendment claim against Eagleson in his individual capacity.

Plaintiff has not, however, otherwise alleged facts to reflect that Eagleson could have but failed to direct the implementation of UGIS or HEPA filters for the facility. Absent such facts, he has not alleged a plausible claim of deliberate indifference against Eagleson. *See Warwick v. Doe*, No. 3:20-CV-227 (JAM), 2020 WL 2768804, at *5 (D. Conn. May 27, 2020) (explaining that, absent facts suggesting that the defendant actually had and failed to exercise the power to get plaintiff in to see a dental surgeon sooner, the plaintiff's allegations amounted only to negligence and not to deliberate indifference). Accordingly, Plaintiff may proceed on his Eighth Amendment claim against Eagleson only for his failure to provide aerosolized disinfectants or HEPA filters after inmates in the housing unit tested positive for COVID-19 and SARS.

**Deputy Warden Rios and Deputy Warden Carbone.** Plaintiff has not alleged any facts to suggest that Deputy Warden Rios was aware of but disregarded a serious risk to Plaintiff's health by failing to direct the implementation of HEPA filters or UGIS throughout the facility or in Plaintiff's housing unit. *See* S*alahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006) ("The charged official must be subjectively aware that his conduct creates such a risk. . . . [E]ven if objectively unreasonable, a defendant's mental state may be nonculpable."). Nor does Plaintiff allege facts indicating that either Deputy Wardens Rios or Carbone were aware of the inmates who tested positive for COVID-19 and SARS in Plaintiff's housing unit. *See Hunter v. Quiros*, No. 3:22-CV-1525 (VAB), 2023 WL 348111, at *3 (D. Conn. Jan. 20, 2023) (dismissing Eighth Amendment claims where allegations failed to show subjective knowledge of the risk faced by the plaintiff).

Accordingly, this Eighth Amendment claim will not proceed against Deputy Wardens Rios or Carbone.

Exercise

Plaintiff alleges that Defendants Hartery, Caron, Carbone, and Rios have deprived him of meaningful daily outside exercise since April 2022. Am. Compl. ¶¶ 36–41, 43, 87–89. Plaintiff alleges that he suffers from low vitamin D and other ailments and that daily outdoor exercise provides exposure to vitamin D and has a positive effect on psychological and physical wellbeing. *See id.* ¶¶ 38–40.

Exercise is a basic human need protected by the Eighth Amendment. *See Wilson v. Seiter*, 501 U.S. 294, 304–05 (1991). Prison officials may, however, limit the right to out-of-cell exercise where there is a valid safety exception or certain unusual circumstances. *Williams v. Greifinger,* 97 F.3d 699, 704 (2d Cir. 1996). A lack of indoor exercise and an "occasional day without exercise" does not give rise to a constitutional claim where "outdoor recreation space [is] provided[,] and opportunity for its daily use [is] assured." *Anderson v. Coughlin*, 757 F.2d 33, 36 (2d Cir. 1985).

**Recreation Director Hartery.** Plaintiff alleges that since November 2022, Recreation Director Hartery has only afforded Plaintiff one hour of out-of-unit exercise per week. Am. Compl. ¶ 37. Prior to November, Director Hartery scheduled Plaintiff's unit with opportunities for outdoor/gym exercise about two or three times per week (although for a period of time inmates had four to five exercise opportunities per week). *Id.* At this early stage in the proceeding, the Court will permit Plaintiff to proceed with his Eighth Amendment claim against Defendant Hartery in his individual capacity for failure to afford him sufficient opportunity for meaningful exercise.

**Warden Caron and Deputy Wardens Carbone and Rios.** Plaintiff asserts that Warden Caron and Deputy Wardens Carbone and Rios violated his Eighth Amendment rights by allowing unconstitutional polices and customs that failed to ensure his opportunity for meaningful outdoor exercise. *Id.* ¶¶ 41, 89. Such conclusory statements are insufficient to support a plausible claim of deliberate indifference against Defendants Caron, Carbone, or Rios. No facts show that these Defendants were aware that Plaintiff was not being afforded adequate opportunities for meaningful outdoor exercise. Absent facts showing a subjective knowledge of the risk faced by Plaintiff, the exercise deprivation claims against Defendants Caron, Carbone and Rios will be dismissed under 28 U.S.C. § 1915A(b)(1).

Sleep Deprivation

Plaintiff asserts Eighth Amendment claims based on his sleep deprivation against Correction Officers Johns and Cormier, Warden Caron, Deputy Wardens Rios and Carbone, Unit Manager Eagleson, and Captain Keaton. "[S]leep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment." *Walker v. Schult*, 717 F.3d 119, 126 (2d Cir. 2013).

Plaintiff asserts that he has experienced sleep deprivation due to the constant illumination and excessive noise from correctional staff and inmates. *See* Am. Compl. ¶¶ 45–71. He alleges that fluorescent lights remain on from 6:25 AM until approximately 10:35 PM, and halogen lights are turned on after the fluorescent lights are turned off. *Id.* ¶ 56.  Plaintiff complains that Correction Officers John and Cormier have yelled into a high-decibel microphone during normal sleep hours, and that prisoners scream, sing, yell, and bang in response to the officers yelling into the microphone and overusing the lights. *Id.* ¶¶ 48–59. On the weekends and national holidays,

9

...

prisoners are permitted to watch television until 2:00 AM, and are also permitted to congregate and talk or watch television in the dayroom after the 12:00 AM count clears. *Id.* ¶ 60.

**Correction Officers Johns and Cormier.** For purposes of initial review, Plaintiff has sufficiently alleged that Correction Officers Johns and Cormier acted with deliberate indifference to his need for sleep by subjecting him to excessive noise and constant illumination. This claim will proceed against both Correction Officers Johns and Cormier in their individual capacities.

**Warden Caron.** Plaintiff alleges that Warden Caron denied his grievance about the lighting in his dormitory. *Id.* ¶ 68. Plaintiff's allegations are sufficient to suggest that Warden Caron acted with conscious disregard to his ongoing sleep deprivation caused by constant illumination.

Plaintiff also asserts that Warden Caron created policies and customs and permitted practices that subjected him to sleep deprivation due to the excessive noise from the high-decibel microphone. *Id.* ¶¶ 90, 91. He has not alleged, however, facts to reflect that Warden Caron was aware that the correctional officers used the microphones in a manner that caused Plaintiff's sleep deprivation. Nor has he alleged any nonconclusory facts indicating that Warden Caron was conscious of Plaintiff's exposure to excessive noise during sleeping hours. Accordingly, the Court must dismiss this Eighth Amendment claim based on sleep deprivation caused by excessive noise against Warden Caron in her individual capacity as not plausible. Plaintiff may, however, proceed on his sleep deprivation claim based on constant illumination against Warden Caron in her individual capacity.

**Captain Keaton.** Plaintiff alleges that Captain Keaton never responded to his inmate request complaining about the constant illumination. *Id.* ¶ 67. However, Captain Keaton's failure to respond to a letter of complaint does not provide a sufficient basis to find that she was aware of

but ignored Plaintiff's sleep deprivation caused by constant illumination. *See Lopez v. Chappius*, No. 6:17-CV-06305 EAW, 2021 WL 859384, at *2 (W.D.N.Y. Mar. 8, 2021). Nor can Plaintiff state a plausible Eighth Amendment claim against Captain Keeton based his conclusory assertion that she created policies and customs or permitted practices that resulted in his sleep deprivation. *Id.* ¶ 84. Absent facts showing that Captain Keaton "personally knew of and disregarded" Plaintiff's sleep deprivation caused by excessive noise and/or constant illumination, Plaintiff's claims against Captain Keeton must be dismissed as not plausible. *See Tangreti*, 983 F.3d at 619.

**Unit Manager Eagleson and Deputy Wardens Carbone and Rios.** As to Deputy Wardens Carbone and Rios and Unit Manager Eagleson, Plaintiff alleges only that they created policies and customs and permitted practices that resulted in Plaintiff's sleep deprivation. Am. Compl. ¶¶ 90–91, 94. Such a conclusory assertion alone is insufficient to show that these defendants acted with conscious disregard of Plaintiff's basic need for sleep. Plaintiff alleges no facts about these defendants' personal involvement in his sleep deprivation caused by constant illumination and noise. Thus, Plaintiff cannot proceed on his Eighth Amendment sleep deprivation claims against these defendants.

Toiletries

Plaintiff alleges that on November 7, 2022, inmates assigned to his housing unit were informed that that they would only be provided one roll of toilet paper per week. *Id.* ¶ 76. After Plaintiff ran out of toilet paper on November 10, he did not receive any more until November 14, 2022. *Id.* ¶ 77. Thereafter, he ran out of paper three days later on November 17, 2022. *Id.* ¶¶ 77, 80. He claims that Warden Caron and Deputy Warden Rios violated his Eighth Amendment rights by failing to ensure that he had adequate toilet paper to maintain his personal hygiene. A

"deprivation of toiletries, and especially toilet paper, can rise to the level of unconstitutional conditions of confinement." *Trammel v. Keane*, 338 F.3d 155, 165 (2d Cir. 2003).

**Deputy Warden Rios and Warden Caron.** Plaintiff allegedly informed Deputy Warden Rios that one roll of toilet paper was insufficient for his personal hygiene needs, but she advised him to order more paper from the commissary. *Id.* ¶¶ 79. Assuming Plaintiff's deprivation meets the objective element of an Eighth Amendment claim, the Court will permit Plaintiff to proceed against Deputy Warden Rios in her individual capacity for further development of the record. Plaintiff has not alleged facts reflecting that Warden Caron was aware that Plaintiff's hygienic needs were not met with only one toilet paper roll per week. Therefore, Plaintiff cannot proceed against Warden Caron in her individual capacity for an Eighth Amendment claim based on the deprivation of toilet paper.

**Right of Access to the Courts[2]**

Plaintiff asserts that he was deprived of his Fourteenth Amendment right of access to the Courts because Recreation Director Hartery scheduled his opportunity for exercise at the same time as the law library hours. *Id.* ¶ 44, 96. "Prisoners have a constitutional right of access to the courts that may not be unreasonably obstructed by the actions of prison officials." *Abrams v. Erfe*, No. 3:17-CV-1570 (CSH), 2018 WL 691714, at *16 (D. Conn. Feb. 2, 2018) (quotation omitted). But to state a plausible claim for denial of access to the courts, an inmate is required to demonstrate that he suffered an actual injury as a result of the conduct of the defendants. *See Lewis v. Casey*, 518 U.S. 343, 351–53 (1996). The inmate must allege facts showing that the defendant took or was responsible for actions that hindered his efforts to pursue

---

[2] The right of access to the courts may arise under the Privileges and Immunities Clause of Article IV, section 2, the Petition Clause of the First Amendment, the Due Process Clauses of the Fifth and Fourteenth Amendments, and the Equal Protection Clause of the Fourteenth Amendment. *See Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002).

a "nonfrivolous" legal claim. *Christopher*, 536 U.S. at 414–15. Plaintiff has not alleged any facts to satisfy this standard. Accordingly, the Court dismisses Plaintiff's Fourteenth Amendment court access claim as not plausibly alleged.

### Official-Capacity Claims

To the extent Plaintiff seeks monetary damages from the defendants, who are state employees, in their official capacities, such claims are dismissed as barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Plaintiff asserts several claims for injunctive relief concerning exercise, dining room conditions, microphone use, fluorescent lighting, toilet paper, and the law library schedule. He also requests to be transferred to Willard, another Level-2 facility. Plaintiff may proceed for such relief against a defendant in his or her official capacity to the extent he alleges an ongoing constitutional violation. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). Plaintiff has plausibly alleged that he is subjected to ongoing Eighth Amendment violations arising from COVID-19 exposure, exercise deprivation, sleep deprivation, and toilet paper deprivation at Robinson. Thus, the Court will permit him to proceed on his requests for injunctive relief to remedy these ongoing Eighth Amendment violations against Warden Caron, who plausibly has the capacity to provide the requested relief. *See Ex parte Young*, 209 U.S. at 157 (noting that a defendant official must have some connection to the enforcement of the allegedly unconstitutional act in order to proceed against that official for injunctive relief). As Plaintiff has not alleged a plausible claim of denial of access to the courts, Plaintiff's request for injunctive relief related to the law library schedule is dismissed without prejudice.

**CONCLUSION**

The Court enters the following orders:

(1) Plaintiff may proceed on his claims alleging:

a. Eighth Amendment violations in connection with Plaintiff's risk of harm from eating meals in the dining room against Deputy Warden Carbone in his individual capacity and against Warden Caron in her individual and official capacities.

b. Eighth Amendment violations for deliberate indifference in connection with the need to implement mitigation measures against Unit Manager Eagleson in his individual capacity and against Warden Caron in her individual and official capacities.

c. Eighth Amendment violations for the deprivation of meaningful exercise opportunities against Recreation Director Hartery in his individual capacity and against Warden Caron in her official capacity.

d. Eighth Amendment violations for causing sleep deprivation against Correction Officers Cormier and Johns in their individual capacities and Warden Caron in her official capacity.

e. Eighth Amendment violations for deliberate indifference to his need for more than one roll of toilet paper per week against Deputy Warden Rios in her individual capacity and against Warden Caron in her official capacity.

All other claims are dismissed without prejudice. The Clerk is directed to TERMINATE Captain Keaton as a Defendant.

(2) In light of Plaintiff's incarceration and the resulting difficulty Plaintiff is likely to encounter effectuating service, the Court orders the Clerk to verify the current work address for Warden Caron, Deputy Warden Carbone, Deputy Warden Rios, and Captain Hartery with the DOC Office

of Legal Affairs, mail a waiver of service of process request packet containing the Amended Complaint to them at their confirmed addresses by **February 25, 2023**, and report on the status of the waiver request on the thirty-fifth (35th) day after mailing. If Defendants fail to return the waiver request, the Clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that Defendant, and that Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) T**he Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal Service is directed to effect service of the Amended Complaint and this Order on Warden Caron in her official capacity at the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06106, within **twenty-one (21) days** from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(4) The Clerk shall mail a courtesy copy of the Amended Complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(5) Defendants shall file their response to the Amended Complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If Defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. Defendants may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, according to Federal Rules of Civil Procedure 26–37, shall be completed by **September 3, 2023**.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to all parties by the Court.

(8) All motions for summary judgment shall be filed by **October 4, 2023**. (7) According to

Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendants or defense counsel of his new address.

(10) Plaintiff shall utilize the Prisoner E-filing Program when filing documents with the Court. Plaintiff is advised that the Program may be used only to file documents with the Court. Discovery requests shall not be filed with the Court, see D. Conn. L. Civ. R. 5(f), and must be served on Defendant's counsel by regular mail.

**SO ORDERED** at Bridgeport, Connecticut, this 9th day of February 2023.

                                                   */s/ Kari A. Dooley*
                                                   KARI A. DOOLEY
                                                   UNITED STATES DISTRICT JUDGE