## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| COURTNEY GREEN, | ) | CASE NO. 3:22-cv-1397 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CARON, *et al.*, | ) | OCTOBER 16, 2023 |
| *Defendants*. | ) | |

### <u>MEMORANDUM OF DECISION</u>
### RE: PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION (ECF NO. 26)

Kari A. Dooley, United States District Judge:

Plaintiff Courtney Green is a *pro se* sentenced prisoner in the custody of the Connecticut Department of Correction ("DOC") at Carl Robinson Correctional Institution ("Robinson CI"). He commenced this civil rights action pursuant to 42 U.S.C. § 1983 against Warden Caron, Deputy Warden Rios and Carbone, Counselor Supervisor Eagleson, Captain Keaton, Recreation Director Hartery, and Correction Officers Johns and Cormier. Compl. at 1–3, ECF No. 1. On February 7, 2023, Green filed an Amended Complaint seeking damages and injunctive relief against the same defendants in their individual and official capacities. Am. Compl. at 3, ECF No. 15. After initial review, the Court permitted Green to proceed on Eighth Amendment claims arising from dining room conditions, lack of adequate mitigation measures to prevent the spread of respiratory contagions, deprivation of meaningful exercise opportunities, sleep deprivation, and inadequate provision of toilet paper. Initial Review Order, ECF No. 16. Green filed a motion for temporary restraining order and preliminary injunction. ECF No. 26. For the following reasons, the motion is DENIED.

**Standard of Review**

A plaintiff may seek injunctive relief against a state official only to the extent that he alleges an ongoing violation of the constitutional rights for which a federal court may enter an order of prospective relief against that official in his official capacity. *See, e.g.*, *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)); *Silva v. Farrish*, 47 F.4th 78, 84 (2d Cir. 2022). A district court has wide discretion in determining whether to grant preliminary injunctive relief. *See Moore v. Consolidated Edison Co. of New York, Inc.*, 409 F.3d 506, 511 (2d Cir. 2005) (Sotomayor, J.). The same standard applies for granting a temporary restraining order and a motion for a preliminary injunction. *Stoneway Capital Corp. v. Siemens Energy Inc.*, 2020 WL 764457, at *1 (S.D.N.Y. Feb. 14, 2020); *Foley v. State Elections Enforcement Com'n*, 2010 WL 2836722, at *3 (D. Conn. July 16, 2010) (internal citations omitted).

The requirements for the issuance of a preliminary injunction are well established. To obtain a preliminary injunction, a plaintiff must establish "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.,* 696 F.3d 206, 215 (2d Cir. 2012) (internal quotations omitted).

A "mandatory preliminary injunction that alters the status quo by commanding some positive act" has a greater burden of proof than a "prohibitory injunction seeking only to maintain the status quo." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (internal quotation marks and citation omitted). To obtain a preliminary injunction against government action, a plaintiff must (1) "make a strong showing of irreparable harm" absent injunctive relief, (2) "demonstrate a clear or substantial likelihood of success on the merits," and (3) demonstrate a

"public interest weighing in favor of granting the injunction" and that the "balance of equities tips in his or her favor." *CC. v. New York City Dep't of Education*, No. 22-0459, 2023 WL 2545665, at *2 (2d Cir. Mar. 17, 2023).

The Second Circuit has cautioned that preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore,* 409 F.3d at 510 (citation and internal quotation marks omitted). "In deciding a motion for preliminary injunction, a court may consider the entire record including affidavits and other hearsay evidence." *J.S.R. by & through J.S.G. v. Sessions*, 330 F. Supp. 3d 731, 738 (D. Conn. 2018) (internal citations omitted). In addition, a federal court should grant injunctive relief against a state or municipal official "only in situations of most compelling necessity." *Vorbeck v. McNeal*, 407 F. Supp. 733, 739 (E.D. Mo. 1976), *aff'd,* 426 U.S. 943 (1976).

"In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846–47 (1994)) (other citations omitted). Federal courts can order prospective relief "in any civil action with respect to prison conditions," provided it "extend[s] no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a). Thus, injunctive relief afforded by a court must be narrowly tailored or proportional to the scope of the violation and extending no further than necessary to remedy the violation. *Brown v. Plata*, 563 U.S. 493, 531 (2011). The court should reject "remedial orders that unnecessarily reach out to improve prison conditions other than those that violate the Constitution." *Id.*

3

**Discussion**

Green requests the Court to order (1) implementation of reasonable COVID measures; (2) suspension of inmate meals in the dining hall until protective barriers are installed and chairs rearranged for social distancing; (3) daily outside exercise; (4) suspension of the use of fluorescent lights from 10:30 P.M. until 8:00 A.M.; (5) suspension of the use of the intercom from 10:30 P.M. to 7:00 A.M.; and (6) distribution to Green of two rolls of toilet paper each week. ECF No. 26 at 1. Green's injunctive requests seek to alter the status quo and therefore he must satisfy the higher standard for mandatory injunction. Defendants argue that Green cannot satisfy this standard for his requested TRO or preliminary injunctive relief. [1] ECF No. 36 at 5-7.

The Eighth Amendment protects against the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This prohibition has both objective and subjective components: official conduct that is "harmful enough" to be characterized as "punishment," and a "sufficiently culpable state of mind." *Walker v. Schult,* 45 F.4th 598, 610 (2d Cir. 2022). "[C]onditions of confinement, 'alone or in combination,' may" violate the Eighth Amendment if they "deprive prisoners of the minimal civilized measure of life's necessities[.]" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 303, 297–98 (1991)). Even if a plaintiff can show a sufficiently serious deprivation to satisfy the Eighth Amendment's objective element, the plaintiff must still prove that "subjectively, the defendant official acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety." *Edwards v. Quiros*, 986 F.3d 187, 192 (2d Cir. 2021) (citation and quotation omitted).

---

[1] A plaintiff's demonstration of a likelihood to prevail on the merits of his constitutional claims raises a "presumption of irreparable harm." *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 636 (2d Cir. 2020) (citing *Jolly v. Coughlin,* 76 F.3d 468, 482 (2d Cir. 1996) ("a presumption of irreparable injury . . . flows from a violation of constitutional rights")). As discussed, Plaintiff has not demonstrated a likelihood to prevail on the merits of his alleged Eighth Amendment deprivations.

Thus, Green must show that the defendants were actually aware of a substantial risk that he would suffer serious harm as a result of their actions or inactions and disregarded that risk by failing to take corrective action. *See Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006); *see also Farmer*, 511 U.S. at 834 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."); *Phelps v. Kapnolas*, 308 F.3d 180, 185–86 (2d Cir. 2002) (defendant must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed] and . . . dr[e]w that inference"). Mere negligence does not constitute deliberate indifference. *See Salahuddin*, 467 F.3d. at 280 ("[R]ecklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent.").

### COVID Mitigation Measures

Green claims that he is anemic and immunocompromised. Am. Compl. ¶ 22. In light of these alleged vulnerabilities, Green requests a court-ordered injunction for the DOC to implement "reasonable COVID-19 safety mitigation measures" and to "cease mass feeding in the chow hall until protective barriers are installed and chairs rearranged for social distancing." ECF No. 26 at 1. Plaintiff alleges that he tested positive for COVID-19 and "got sick" in 2022. *Id.* at 5.

In support of his request for this injunctive relief, Green submits (1) medical reports that show his low white blood cell counts in 2013, 2014, 2016, 2017, and 2022; (2) a Level 1 Grievance filed in June 2022 requesting that masks be worn in the "chow hall" during meals due to his medical conditions and his Level 2 appeal regarding the same; (3) a Level 1 Health Services Administrative Remedy filed in May 2022 requesting that DOC stop congregate meals

in the dining room due to his "several ailments" that render him at "heightened risk of contracting COVID-19 and becoming seriously ill or dying;" (4) an inmate request that questioned why masks were required in the prison facility and outside but not in the dining hall during meals. *Id.* at 19–31, 40–43.

Green's evidence reveals that Warden Caron had some awareness of Green's claim of anemia and vulnerability to COVID-19 and respiratory illnesses. But in her denial of Green's Level 1 Grievance dated June 2, 2022, Warden Caron stated that Robinson CI was "operating under the transitional phase while also continuing to monitor the Covid-19 positivity rates both in the facility and in the community" and that "[a] notable increase would require us to reinstate restrictions." *Id.* at 28. Likewise, the response to his Level 2 Appeal stated that "DOC is following all precautions related to COVID-19 as dictated by the Centers for Disease Control and Prevention (CDC). The DOC holds varying phases of security in place to combat the spread of COVID-19, we test regularly and closely monitor cases within our facilities." *Id.* at 26. Thus, it is not established that Green remains at risk of serious harm in light of population immunity due to vaccinations which has substantially abated the rate of infection and risks associated with the COVID-19 illness. *United States v. Amuso*, No. 90-cr-00446 (FB), 2023 WL 5153425, at *3 (E.D.N.Y. Aug. 10, 2023) (noting pandemic's abatement and lessened need for restrictions to prevent spread of disease); *United States v. Folkes*, No. 18-cr-257 (KAM), 2022 WL 1469387, at *6 (E.D.N.Y. May 10, 2022) (citing CDC statement that "[w]ith high levels of population immunity from vaccines or prior infection, 5-7 breakthrough cases and reinfections more frequently result in asymptomatic infections or milder illness in most persons.") (internal quotation marks omitted); *Harper v. Cuomo*, No. 9:21-cv-0019 (LEK/ML), 2021 WL 1821362, at *7 (N.D.N.Y. Mar. 1, 2021) (concluding inmates had not shown clear likelihood of success to

demonstrate substantial risk of serious harm given measures that prison officials instituted to address COVID-19 and the low COVID-19 positivity rate that those measures have attained) (citations omitted), *R. & R. adopted*, 2021 WL 1540483 (N.D.N.Y. Apr. 20, 2021).[2]

Green also fails to clearly demonstrate that he remains at risk of imminent harm due to exposure from other serious respiratory diseases while he is confined at Robinson CI. Green presents no evidence that his COVID-19 illness in 2022 was severe, that he has been again recently exposed to COVID-19 or other serious respiratory illness, or that he or any other individuals have recently become infected with the COVID virus or other serious respiratory illness due to the conditions at Robinson CI. It is well established that a mere possibility that a plaintiff may be subjected to a deprivation of constitutional dimension is not sufficient to support a request for injunctive relief. *See New York v. Actavis PLC*, 787 F.3d 638, 660 (2d Cir. 2015) (explaining irreparable harm must be actual and imminent that cannot be remedied by damages) (internal quotation marks and citation omitted); *Thompson v. Lantz*, No. 3:04-cv-2084 (AWT), 2005 WL 2387706, at *4 (D. Conn. Sept. 28, 2005) ("Possible future harm is insufficient to support a request for injunctive relief."). In sum, Green has not demonstrated a clear likelihood to prevail on the merits of the alleged Eighth Amendment violation or that he will suffer irreparable harm if the Court does not afford him the requested injunctive relief.

---

[2] Both the federal government and the State of Connecticut issued declarations ending the COVID-19 Public Health Emergency on May 11, 2023. *See End of the Federal COVID-19 Public Health Emergency (PHE) Declaration*, Centers for Disease Control and Protection, https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=What%20You%20Need%20to%20Know,share%20certain%20data%20will%20change [https://perma.cc/AF4V-V3WH] (last visited Oct. 13, 2023); *Governor Lamont Announces Connecticut's COVID-19 Public Health Emergency Declaration Will End on May 11, Explains Impact on Related Services and Programs*, Office of the Governor, https://portal.ct.gov/Office-of-the-Governor/News/Press-Releases/2023/05-2023/Governor-Lamont-Announces-COVID-19-Public-Health-Emergency-Declaration-Will-End-on-May-11#:~:text=(HARTFORD%2C%20CT)%20%E2%80%93%20Governor,directed%20the%20related%20federal%20public [https://perma.cc/HAF5-5R7M] (May 10, 2023).

Moreover, the requested injunctive relief for unspecified "reasonable COVID-19 measures," ceasing all congregate meals, and instituting barriers and dining room reorganization for social distancing do not present narrowly tailored relief for the alleged violation of Green's Eighth Amendment rights. Because such remedial measures exceed the scope of any Eighth Amendment violation arising from deliberate indifference to Green's medical vulnerability, Green's request for such injunctive orders must be denied on this additional ground.

*Exercise Deprivation*

Green requests that the Court order that he be provided daily exercise to remedy the alleged Eighth Amendment violation arising out of his exercise deprivation. ECF No. 26 at 1. He alleges that on June 16, 2022, he was prescribed vitamin D after being diagnosed with low vitamin D "more than probab[ly]" attributable to his lack of sunlight. ECF No. 15 at ¶ 38; *see also* ECF No. 26 at 4–5.

The Second Circuit has recognized that, under the Eighth Amendment, "some opportunity for exercise must be afforded to prisoners." *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985). However, not every denial of physical exercise amounts to a constitutional violation. For example, "deprivations of physical exercise for short periods will not rise to constitutional dimension. . . ." *McCray v. Lee*, 963 F.3d 110, 117 (2d Cir. 2020) (holding that the plaintiff had sufficiently alleged an Eighth Amendment claim when he asserted a denial of physical exercise for a four-month period). Prison officials also are permitted to limit the right to out-of-cell exercise where there is a valid safety exception, or in unusual circumstances. *Williams v. Greifinger*, 97 F.3d 699, 704 (2d Cir. 1996).

In support of his request for injunctive relief, Green submits his Level 1 and 2 Grievances complaining that he was not being provided with one hour of exercise in an "open air" area. ECF

No. 26 at 33–36. Warden Caron's Level 1 Grievance denial explained that Robinson CI "is not a celled facility" but permits inmates "to move freely throughout the housing unit/dayroom during normal operational hours," and that "[t]he current rec schedule is continuously adjusted monthly by the recreation supervisor to provide the offender population with recreation time as permitted while following covid-19 guidelines." *Id.* at 33.

Thus, Green's own evidence undercuts his showing of a clear likelihood on the merits of his exercise deprivation claim. In the first instance, it is not clear that he can prove an exercise deprivation that rises to the level of harm required to satisfy the objective element. According to the record, Green is not completely being denied exercise, and has not even indicated a lack of exercise in the open air. In addition, the record indicates that Defendants have what appear to be a legitimate reasons to limit inmate exercise opportunities as was permitted by *Williams*. As Green's evidence suggests that he may subjected to occasional deprivations of open air exercise—but has the opportunity to exercise within the facility and its day room—the Court concludes that Green has not demonstrated a clear likelihood of his success on his claim of Eighth Amendment exercise violation or that he will suffer irreparable harm absent an injunction.

*Fluorescent Lighting and Noise*

Green also brings Eighth Amendment claims arising from alleged sleep deprivation caused by light and excessive noise from correctional staff and inmates. ECF No. 16 at 8. Green requests injunctive relief to remedy the illumination from fluorescent lights for nine and a half hours from 10:30 PM to 8:00 AM, and noise from microphones for eight and a half hours from 10:30 PM to 7:00 AM. ECF No. 26 at 1. Green claims that he is "unable to get a full restful sleep at Robinson CI, due to correctional staff's overuse of a high decibel microphone during normal

sleep hour[s] … and correctional staff subjecting [him] to constant illumination with bright fluorescent and halogen lights." *Id.* at 6.

"[S]leep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment." *Walker v. Schult*, 717 F.3d 119, 126 (2d Cir. 2013). However, courts within this district have held that an inmate must show serious health effects for sleep deprivation to satisfy the Eighth Amendment's objective element. *See Aikens v. Herbst*, No. 16-cv-772S (WMS), 2017 WL 1208666, at *3 (W.D.N.Y. Apr. 3, 2017) (dismissing Eighth Amendment sleep deprivation claim where plaintiff failed to allege any harmful effects on his health beyond mere discomfort); *Holmes v. Fischer*, No. 09-cv-00829S (F), 2016 WL 552962, at *17 (W.D.N.Y. Feb. 10, 2016) (plaintiff failed to substantiate that cell illumination "resulted in anything more than some sleep deprivation which has consistently been held below the requisite severity for an Eighth Amendment claim"); *Jones v. Smith*, 2015 WL 5750136 (GLS), at *15 (N.D.N.Y. Sept. 30, 2015) (plaintiff failed to allege any serious health effects caused by sleep deprivation resulting from 13-watt night light illuminating cell). Here, Green submits his Level-2 Grievances complaining about the noise and cell illumination. ECF No. 26 at 51–55.

The grievance concerning microphones complains about unreasonable use during sleeping hours. ECF No. 26 at 51. His grievance concerning illumination references the "psychological toll" caused by the illumination "designed to break one's spirit and mental fight." ECF No. 26 at 54; *see also id.* at 6. But Green's conclusory assertions of unreasonable microphone use and "psychological toll" caused by illumination is not sufficient to show he can demonstrate sleep deprivation of a constitutional dimension. In addition, Green's evidence indicates that the illumination in his unit may be necessary for legitimate penological reasons such as cell counts and unit meals. *Id. See, e.g.*, *Marhone v. Cassel*, No. 16-cv-4733 (NSR), 2022

WL 4468056, at *6 (S.D.N.Y. Sept. 26, 2022) ("[D]ecisions evaluating Eighth Amendment claims based on continuous lighting in the prison setting are very 'fact-driven,' turning on the degree of illumination, the duration of the inmate's exposure, the extent of harm it causes, and the penological justification for the lighting."); *Booker v. Maly*, No. 9:12-cv-246 (NAM/ATB), 2014 WL 1289579, at *19 (N.D.N.Y. Mar. 31, 2014) (Eighth Amendment claim based on 24-hour illumination of prison cell failed where evidence established low wattage night light enabled corrections officers to see into cell without further disturbing inmate, thereby furthering a legitimate, penological interest); *Jones v. Smith*, No. 9:09-cv-1058 (GLS/ATB), 2015 WL 5750136, at *15 (N.D.N.Y. Sept. 30, 2015) ("It is well-recognized that the ability to maintain the safety of inmates and the officers is a legitimate penological interest."); *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 367–68 (N.D.N.Y. 2010) ("Defendants had a legitimate penological interest in protecting both guards and inmates by keeping the lights constantly illuminated in the SHU, a place where some of the most dangerous criminals in the facility were housed.").

As Green has not shown a clear likelihood of proving serious harm from sleep deprivation resulting from the noise and illumination, he has also failed to demonstrate his likelihood to succeed on the subjective element. *See Blaine v. Burnes*, No. 3:20-cv-1039 (KAD), 2020 WL 5659101, at *7 (D. Conn. Sept. 23, 2020) ("[I]t is all but axiomatic that where the condition itself is not sufficiently serious, there can be no finding that the defendants were aware that he would be subjected to a substantial risk of harm as a result of their actions or inactions with respect to his treatment for the condition."). Accordingly, Green has not satisfied his burden necessary for obtaining a TRO or preliminary injunction based on the noise and illumination in his housing unit.

*Toilet Paper*

A "deprivation of toiletries, and especially toilet paper, can rise to the level of unconstitutional conditions of confinement." *Trammel v. Keane*, 338 F.3d 155, 165 (2d Cir. 2003). Green claims that he cannot maintain his hygiene with issuance of only one roll of toilet paper weekly. ECF No. 26 at 6; ECF No. 16 at 11. He claims that he ran out of toilet paper on November 10, 2022 and did not receive any more until November 14, and that he thereafter ran out of paper three days later on November 17, 2022. *See id.* In support of his injunctive request, Green submits his Level 1 and Level 2 Grievances complaining that the one roll of toilet paper distributed on November 7, 2022 was insufficient. ECF No. 26 at 45, 57. The responses to the Level 1 and 2 Grievances—dated January 10 and February 24, 2023, respectively—indicate that Green was no longer being provided one roll of toilet paper per week as officers were distributing two toilet paper rolls per week in accordance with the Warden's instructions of December 1, 2022. *See id.* at 45 ("Per the Warden on 12/1/2022. Officers will continue to distribute [t]wo rolls of toilet paper to each inmate in the housing units."); *id.* at 57 ("One roll of toilet paper is distributed weekly, however, the facility increased the distribution to two rolls of toilet paper weekly due to back order of toilet paper available for purchase through the commissary."). Thus, this request for injunctive relief appears to be moot.

Notwithstanding, Plaintiff has not shown a clear likelihood of success on his claim that one roll of toilet paper per week constitutes cruel and unusual punishment under the Eighth Amendment. Plaintiff provides no explanation as to why one roll of paper is insufficient for him when it appears to be the facility standard for all Robinson CI inmates. *See id.* at 57. Further, Green has not demonstrated a conscious disregard to his asserted serious hygiene deprivation resulting from the standard amount of toilet paper provided to all Robinson CI inmates on the part of Defendants. Based on the present record, the Court cannot conclude that Green has

demonstrated a clear likelihood to prevail on his Eighth Amendment claim based on one roll of toilet paper.

**Conclusion**

For the foregoing reasons, Plaintiff's motion for a temporary restraining order or preliminary injunction is DENIED.

**SO ORDERED** at Bridgeport, Connecticut, this 16th day of October 2023.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE